

FILED & JUDGMENT ENTERED
Steven T. Salata

Jun 02 2016

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Chapter 13 |
| Kazuko Banner | ) Case No. 15-31761 |
| | ) |
| Debtor. | ) |

## ORDER SANCTIONING JOSEPH M. KOSKO, VOLKS ANWALT LAW, AND JESSICA MCCLEAN

This order addresses matters related to the representation of the Debtor by Joseph M. Kosko ("Kosko"), Volks Anwalt Law[1] ("Volks Anwalt"), and Jessica McClean[2] ("McClean"). The court conducted hearings related to the following matters on January 12, 2016, January 28, 2016, and February 18, 2016:

1. The court's Order to Appear and Show Cause ("Kosko Show Cause Order") directed to Kosko [docket #15];

---

[1] Volks Anwalt was formed as Volks Anwalt of New York, LLC and has subsidiary entities in Virginia (Volks Anwalt of Virginia, LLC) and Florida (Volks Anwalt of Florida, LLC).

[2] Jessica McClean testified at the February 18, 2016 hearing that she had recently married and changed her last name to "McClean." Most of the documents related to this matter reflect her maiden name, Jessica McHale.

2.   The Motion of Trustee for Order Directing Attorney for Debtor to Appear and Show Cause ("Trustee Motion") directed to Kosko [docket #18];

3.   The court's Order Holding Joseph M. Kosko in Contempt of Court ("Contempt Order") [docket #21];

4.   The Bankruptcy Administrator's Motion for Show Cause Order Requiring Volks Anwalt Law and Jessica McHale to Appear and Show Cause Why They Should Not Be Sanctioned ("BA Motion") [docket #22];

5.   The court's Order to Appear and Show Cause ("Volks Anwalt Order") directed to Volks Anwalt and McClean [docket #32]; and,

6.   The court's Order granting the Trustee Motion [docket #43].

## PROCEDURAL HISTORY AND FINDINGS OF FACT

1.   The Debtor filed a Chapter 13 voluntary petition on November 6, 2015 [docket #1].  At that time, the Debtor also filed an Application for Individuals to Pay the Filing Fee in Installments [docket #2] that was purportedly signed by Kosko as the Debtor's attorney and the Debtor.  The court granted this application by order entered on November 9, 2015 [docket #4].

2.   The court issued a Notice of Deficient Filing [docket #3] on November 9, 2015 because the Debtor's petition was a "bare bones" filing and did not contain all of the required schedules, statements, summaries, declarations, and local forms.  Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule" or "Rule") 1007(c) requires any missing documents to be filed within 14 days of the filing of the petition or, in this case, by Friday, November 20, 2015.  Local Rule 2016-2(b) requires every Chapter 13 debtor to file an executed Disclosure to Debtor of Attorney's Fees Procedure For Chapter 13 Cases in the United States Bankruptcy Court for the Western District of North Carolina ("Local Form 3").  Local Rule 2016-2(f) requires the attorney for the debtor to maintain the originally executed Local Form 3 "for a period of four years after the closing of the case."

3.    On November 22, 2015, after the expiration of the time period to file the remaining documents, Kosko filed an Ex Parte Motion for Extension of Time to File Schedules, Statements and Chapter 13 Plan ("Extension Motion") [docket #7].    While the motion requested an extension until December 4, 2015, no order was ever submitted allowing the extension.    Even if the extension had been allowed, the Debtor's schedules, statements, and other documents would still have been untimely, as they were dated and filed on December 7, 2015 [docket #s 10, 29].    These documents resulted in two Notices of Defective Entry or Filing [docket #s 12, 13] when they were belatedly filed, as the documents were docketed incorrectly, the Chapter 13 plan motions were not selected in the plan, and the documents did not comply with Bankruptcy Rule 9037.[3]

4.    The court entered the Kosko Show Cause Order due to the problems with the case up to that point in time.    The problems included Kosko's failure to submit an order granting the Extension Motion, the incorrectly docketed schedules, the missing Local Forms 3 and 13, Kosko's failure to respond to communications from the court and the Debtor, and the unpaid portion of the filing fee.    Kosko was ordered to appear on January 12, 2016 at 10:00 a.m.    The Kosko Show Cause Order was served on Kosko through his registered ECF (Electronic Case Filing) email address and on Volks Anwalt by regular mail [docket #16].

The Hearings

5.    On January 12, 2016, the court conducted a hearing on the Kosko Show Cause Order. Jenny P. Holman ("Holman"), attorney for the Chapter 13 Trustee; Linda W. Simpson

---

[3] Kosko, McClean, and Volks Anwalt never corrected this defect and left the Debtor's Social Security number available to the public until the court, upon the oral request of the Chapter 13 Trustee, entered an order [docket #28] sealing the unredacted documents [docket #10] and re-docketing the documents after the private information had been properly redacted [docket #29].

("Simpson"), U.S. Bankruptcy Administrator; and the Debtor appeared at the hearing.[4]  Kosko failed to appear.

6.  As a result of Kosko's failure to appear on January 12, 2016, the court granted the Trustee Motion, found Kosko in contempt, and entered the Contempt Order.  The Contempt Order set a hearing for January 28, 2016 and allowed Kosko the opportunity to purge his contempt by appearing at the hearing.

7.  On January 28, 2016, the court conducted hearings on the Trustee Motion, the BA Motion, the Kosko Show Cause Order, and the Contempt Order.  Holman; Alexandria P. Kenny ("Kenny"), attorney for the U.S. Bankruptcy Administrator; the Debtor; and Kosko appeared at these hearings.  Neither McClean nor Volks Anwalt appeared to contest the BA Motion.  Kosko; David Jobson ("Jobson"),[5] Operations Supervisor, United States Bankruptcy Court for the Western District of North Carolina; and the Debtor testified at the hearing.

8.  At the conclusion of the January 28, 2016 hearings, the court granted the BA Motion, continued the remaining hearings, and announced that the final ruling on these matters would occur after the hearing on the Volks Anwalt Order on February 18, 2016.  Kosko was not required to appear at the February 18 hearing unless subpoenaed by a party.

---

[4] Following the January 12, 2016 hearing and at the court's suggestion, the Debtor completed and filed Local Form 13 without the assistance of Kosko, McClean, or Volks Anwalt.

[5] Jobson's testimony confirmed that Kosko completed the online form to obtain an ECF login and password from this court on November 6, 2015 and agreed to the court's rules for ECF, including not allowing unauthorized use of his login and password and agreeing to abide by all Federal and Local Rules.

9.   On February 18, 2016, the court conducted a hearing on the Volks Anwalt Order.[6] Holman; Simpson; Kenny; the Debtor; Jake Larsen, attorney for McClean; and McClean, both personally and as the representative of Volks Anwalt, appeared at the hearing.

10.   The Debtor's representations at the January 12 hearing and the Debtor's testimony at the January 28 and February 18 hearings were consistent, logical, and believable.  The Debtor was intelligent and articulate and epitomized the honest but unfortunate debtor that the bankruptcy laws are designed to protect.  See Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934).

11.   In contrast, Kosko was inarticulate.  At the January 28, 2016 hearing, the court had to ask him numerous times to repeat his answers or to speak up.  Kosko lacked recollection of matters that he should have remembered either from memory or from reviewing the records prior to the hearing.  Kosko did not take responsibility for his part in the Debtor's representation or show any remorse.  Despite all of this, the court finds Kosko's testimony to be credible because it was replete with statements against his own interest.

12.  McClean's testimony was generally vague or non-responsive.  The court instructed McClean to give estimates in the event she did not know the specific answer to a question. McClean, however, continued to answer questions by stating, "I don't know," prompting the court to admonish her that consistently answering questions in this manner was not believable in light of her position as managing partner of Volks Anwalt and would not prove helpful to her. On multiple occasions, McClean referred to an error or a violation of law as an "isolated incident."  For example, she said that the agreement not to practice in the Western District of

---

[6] The court also conducted a hearing on the Order to Appear and Show Cause [docket #31] related to Colette T. Davis's appearance for the Debtor at the § 341 meeting of creditors. Following Ms. Davis's testimony, the court deemed the show cause order satisfied with no further action necessary with respect to Ms. Davis.

Virginia[7] related to an "isolated incident" and that the filing of the Debtor's case by a paralegal was also an "isolated incident." Based on the sheer volume of errors in and issues with this case, it is doubtful that the Debtor's experience in this case is an isolated incident. The court concludes from the substance of McClean's testimony and her demeanor that her testimony is not credible. Instead, the court finds McClean's testimony to be self-serving and unremorseful. McClean did not take responsibility for the actions taken in this case, for the failure to ensure that the Debtor was properly represented, or for the harm caused to the Debtor.

The Attorneys and the Law Firm

13. Kosko has been licensed to practice law in North Carolina for approximately twenty years. His practice is a general practice that includes bankruptcy services. According to Kosko, he files Chapter 7 cases more often than other types of bankruptcy cases.

14. McClean received her J.D. degree from the Florida Coastal School of Law in 2013 and was admitted to the bars of New York (2014) and Florida (2015). McClean is not a licensed attorney in North Carolina and is not admitted to practice in state or federal court in North Carolina. McClean has permanently resided in Jacksonville Beach, Florida since the spring of 2015. Prior to that, McClean resided in Rochester, New York. McClean has never resided in New York City. McClean has personally filed five bankruptcy cases for debtors, all in the Middle District of Florida.

15. Volks Anwalt was formed as a New York limited liability company on May 13, 2015 by McClean, who is the sole owner and the managing partner of the firm. McClean realized that

---

[7] McClean, as the managing attorney for Volks Anwalt, agreed to refund fees to a debtor and not to provide assistance or representation or collect fees in bankruptcy cases in the Western District of Virginia for three years. In re Glover, No. 15-61476 (Bankr. W.D. Va. Dec. 15, 2015) (Agreed Order Granting and Resolving Trustee's Motion to Disgorge Attorney's Fees and Motion for Review of Attorney's Fees).

she "did not have a lot of experience" and researched law firm business models to create Volks Anwalt. She "figured this was a way to learn from other experienced attorneys." McClean estimated that her friends invested $10,000 for the start-up of the firm. While Volks Anwalt has "partners" other than McClean, they have no voting rights, own only nominal shares in the firm, and have no authority, control, or input over the operations and management of Volks Anwalt. The only authority that these "partners" may have is with respect to case management of their assigned cases in their localities. McClean controls all matters related to the business of Volks Anwalt, including overseeing all financial, marketing, and human resources activities.

16. Volks Anwalt's business plan was developed by McClean and included a marketing plan that used direct mailings targeting individuals subject to foreclosure proceedings. Volks Anwalt directly solicited the Debtor through this marketing plan.[8] Volks Anwalt operates in 43 states and, as of February 18, 2016, has handled approximately 400 bankruptcy cases since its inception in May 2015. McClean testified that neither she nor any representative of Volks Anwalt made any effort to research the laws of each state or the requirements of each state bar prior to soliciting and conducting business in these states. McClean and Volks Anwalt have not complied with the laws related to doing business in North Carolina or the requirements of the North Carolina State Bar.

17. Volks Anwalt searches for local attorneys through advertisements placed on a recruiting website and by searching a resume website. Targeted attorneys are then directly contacted regarding local partnerships. Volks Anwalt performs minimal (if any) due diligence prior to entering into an agreement for a local attorney to become a "partner."

---

[8] At the February 18 hearing, McClean testified that Volks Anwalt's marketing plan was revised after the commencement of this case to exclude direct mailings due to issues with ethical compliance with various state bars.

18.  Volks Anwalt's business plan does not require local "partners" to appear at all hearings and meetings of creditors pursuant to 11 U.S.C. § 341.  McClean testified that the local "partner" assigned to a particular case does not attend between one-fourth and one-third of all hearings and meetings of creditors.   Instead, Volks Anwalt pays monthly fees to an Internet service, MyMotionCalendar.com, to obtain attorney representation for its clients.  Volks Anwalt does nothing to assure the suitability of a coverage attorney obtained through MyMotionCalendar.com.

The Debtor's Case

19.  The Debtor contacted Volks Anwalt in response to a direct mailing.   The Debtor explained to Volks Anwalt that she had previously filed a bankruptcy case pro se and was planning to file another case without an attorney.  Volks Anwalt's representative convinced the Debtor to retain Volks Anwalt to represent her in her bankruptcy case.  The Debtor told Volks Anwalt that her primary goal was to save her home from a pending foreclosure sale.  Volks Anwalt was aware of the foreclosure sale date and the 10-day upset bid period in North Carolina when the filing of a bankruptcy case will stop the completion of a foreclosure.

20.  The Debtor timely supplied all of the information and documentation requested by Volks Anwalt.  In fact, the Debtor often left work to scan and fax documents to Volks Anwalt.[9]  The Debtor timely paid a $1000 fee that allowed Volks Anwalt sufficient time to file her bankruptcy petition prior to the expiration of the 10-day upset bid period on November 5, 2015.  During the preparation of the bankruptcy petition, schedules, statements, and plan, the Debtor did not meet with or speak to an attorney licensed to practice law in North Carolina.  The Debtor questioned

---

[9] The Debtor testified that her employment was subject to a 90-day probationary period during this time.  The Debtor was terminated from her employment because of her absences due to complying with Volks Anwalt's requests and testifying before this court.

the representatives of Volks Anwalt regarding a number of matters, including her payments under the proposed plan, but no explanations were given.

21. Although the 10-day upset bid period expired on November 5, 2015, the Debtor's bankruptcy petition was not filed until November 6, 2015.  In fact, Kosko did not obtain a login and password for this court's ECF system until after the upset bid period ended.  Volks Anwalt never informed the Debtor that her bankruptcy filing did not stop the foreclosure process.  After Volks Anwalt lured the Debtor by their direct advertising and convinced her to allow it to represent her, the Debtor lost the opportunity to save her house.  Volks Anwalt's actions related to the timing of the filing of the petition alone are outrageous and unconscionable.[10]

22. Volks Anwalt reminded the Debtor of the meeting of creditors in her case via first class mail and voicemail.  Despite these reminders, Volks Anwalt never informed the Debtor that Kosko would not appear and that Colette Davis would represent the Debtor at the meeting. Neither Volks Anwalt nor Kosko contacted the Debtor following the meeting of creditors.

23. The Debtor continued to attempt to communicate with Volks Anwalt and Kosko throughout the case, especially when she began to receive eviction notices.  The Debtor was not aware that her bankruptcy petition did not stop the foreclosure proceeding, nor was she aware of the other problems in her case caused by the incompetence of and the failure to act by both Volks Anwalt and Kosko.

24. The incompetence and irresponsibility did not end with the failure to timely file the Debtor's petition.  Kosko gave Volks Anwalt his ECF login and password because "they asked" for it.  In short, Kosko provided his ECF login and password to Volks Anwalt in return for the

---

[10] Whether the Debtor could have retained her home through a Chapter 13 plan is not relevant. Volks Anwalt deprived her of the opportunity to stop the foreclosure and to propose a confirmable plan that would have allowed her to retain her home.

expectation of easy money for little or no effort on his part.[11]  Kosko never communicated with the Debtor prior to the filing of her bankruptcy petition and first saw the Debtor at the hearing on the Contempt Order.  He did not participate in the intake conference with the Debtor, review any papers with the Debtor, or answer any of the Debtor's questions.  Kosko's only communication with the Debtor occurred after the filing of her bankruptcy petition and was not of any assistance to her.  Kosko never prepared any schedules, statements, a Chapter 13 plan, or any other documents filed in this case.  The one and only document filed (though not prepared) by Kosko was the Extension Motion.  All other documents were prepared by and directly filed by Volks Anwalt using Kosko's ECF login and password.  Kosko did not physically sign any filed documents bearing his name, and Kosko does not know whether the Debtor physically signed any filed documents bearing her name.

25.  As shown by his testimony, Kosko lacks basic knowledge of and familiarity with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Rules of Practice and Procedure ("Local Rules") of this court.  Specifically:

a.  Kosko is unfamiliar with Bankruptcy Rule 2016 and 11 U.S.C. § 329;

b.  Kosko is unfamiliar with Local Form 3 and was unaware that it had not been filed as of the date of the hearing on the Contempt Order.  Kosko is completely unaware of a Chapter 13 debtor's attorney's duties in this district;

c.  Kosko is unfamiliar with Local Rules 1002–2 and 5005-1 regarding original signatures and electronic filings;

---

[11] Kosko testified that he never received any payment from Volks Anwalt.

d.  Kosko is unfamiliar with 11 U.S.C. §§ 342 & 527 and the written notices and disclosures required therein.  Kosko did not provide the Debtor with any of the notices and disclosures required by §§ 342 & 527; and,

e.  Kosko is unaware of the requirements of Bankruptcy Rule 9037.  Kosko never verified the Debtor's identity or Social Security number.  Kosko was unaware that the Debtor's full Social Security number was listed in her filed documents and took no actions to redact that filing.

26.  Kosko knew the scheduled date for the Debtor's meeting of creditors, but he did not attend it.  In fact, Kosko never planned to attend the meeting, any continued meetings, or any hearings in the Debtor's case.  The clearest evidence of Kosko's intentions with respect to appearances in this case is Kosko's statement that, even with respect to the Kosko Show Cause Order wherein this court ordered him to appear, Kosko believed that Volks Anwalt would obtain counsel to appear and that he did not need to do so.  Although Kosko knew Collette Davis would appear on his behalf at the § 341 meeting, he did not know if she was licensed to practice law, and he did not verify Ms. Davis's ability to properly represent the Debtor.

27.  Kosko was aware of problems with the documents filed in this case but took no action to amend them.  Kosko did not contact the Debtor or the Chapter 13 Trustee concerning the § 341 meeting or its outcome.  Kosko failed to respond to correspondence from the Chapter 13 Trustee's office with respect to filed schedules and plans that required amendment.  As referenced in the Kosko Show Cause Order, Kosko also failed to respond to communications from this court and the Debtor.

28.  McClean and Volks Anwalt have failed in most, if not all, of the same respects as Kosko and not only match but exceed Kosko's incompetence and disregard for the Debtor.  Volks

Anwalt and McClean failed to timely prepare and file the Debtor's bankruptcy petition before the expiration of the 10-day upset bid period despite having sufficient time and being fully informed of the necessity to timely file the petition.  Volks Anwalt and McClean failed to communicate with their client despite repeated attempts by the Debtor to obtain information and assistance, especially after she received eviction notices.  Volks Anwalt and McClean failed to notify the Debtor that this case did not stop the pending foreclosure action because her petition was filed after the expiration of the 10-day upset bid period.  Volks Anwalt received sufficient funds to pay the Debtor's filing fee to the court at the time the petition was filed but failed to timely pay the filing fee pursuant to the Order Granting Payment of Filing Fee in Installments [docket #4] that required $100 payments on December 6, 2015 and January 6, 2016.[12]

29.  Volks Anwalt and McClean failed to verify the Debtor's identity and her Social Security number prior to filing a petition with the court.  Neither Volks Anwalt nor McClean obtained or retained the original signatures of the Debtor or Kosko in this case in violation of the Local Rules of this court.  Numerous defective and deficient filing notices were issued by the Bankruptcy Clerk [docket #s 3, 12, 13, 14] and forwarded to Volks Anwalt by Kosko.  Volks Anwalt ignored all of these notices and claims that Kosko was solely responsible for any errors or omissions in the documents filed with the court.  Volks Anwalt and McClean misrepresented to Kosko the nature and scope of his representation of the Debtor.  Volks Anwalt prepared and filed a document that included the Debtor's full Social Security number in violation of Rule 9037.  Despite numerous opportunities, Volks Anwalt took no action to comply with Rule 9037, and the court had to seal the improper document, make the proper redactions, and re-docket the redacted document.

---

[12] Volks Anwalt paid the final installment payment of $200.00 on January 13, 2016.

30. In addition, Volks Anwalt and McClean failed to propose a proper and confirmable Chapter 13 plan. The Debtor's plan [docket #s 10, 29] and amended plan [docket #11] did not propose to pay the arrearage on the mortgage, the regular mortgage payment, the car payment, the attorney's fee, or any dividend to the Debtor's unsecured creditors. Secured creditors were listed in the schedules, but no treatment was provided for these debts in the plan or the amended plan.

31. Volks Anwalt practiced law in North Carolina by advising the Debtor and by preparing and filing the Debtor's bankruptcy petition, schedules, statements, and other documents; however, no attorney licensed to practice in this jurisdiction advised the Debtor prior to the filing of her bankruptcy case, and no licensed attorney reviewed the Debtor's petition, statements, and schedules prior to filing. The Debtor hired Volks Anwalt to represent her. Without her permission, Volks Anwalt engaged Kosko and Colette Davis to represent the Debtor. Volks Anwalt, McClean, and Kosko all abandoned the Debtor.

## CONCLUSIONS OF LAW

32. This court has jurisdiction over Kosko, McClean, and Volks Anwalt. Kosko is an attorney admitted to practice in the Western District of North Carolina and, as such, is an officer of the court. Like Kosko, McClean and Volks Anwalt have voluntarily presented themselves to this bankruptcy court. See Williams v. Lynch (In re Lewis), 611 F. App'x 134, 136–37 (4th Cir. 2015) (unpublished per curiam).

33. All federal courts, including bankruptcy courts, are vested with the power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 630–31 (1962)). This inherent power includes "the power to control admission to its bar and to

discipline attorneys who appear before it." Id. (citing Ex parte Burr, 22 U.S. (9 Wheat.) 529, 531 (1824)). Moreover, 11 U.S.C. § 105(a) specifically grants bankruptcy courts the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Rule 9011 also provides for sanctions against attorneys who sign, file, submit, or later advocate for papers that are presented for an improper purpose, present unwarranted or frivolous positions, or are without evidentiary support. See In re Burton, 442 B.R. 421, 466–67 (Bankr. W.D.N.C. 2009) (addressing the sources of the court's authority for sanctioning and disciplining attorneys who appear before the court). Bankruptcy courts "have inherent and statutory power to police the conduct of the parties who appear before them and to impose sanctions on those parties who abuse the judicial process." Blue Cross & Blue Shield of N.C. v. Jemsek Clinic, P.A. (In re Jemsek Clinic, P.A.), No. 3:14-cv-417-RJC, slip op. at 7 (W.D.N.C. Dec. 8, 2015) (citations omitted). Available discipline and sanctions are not restricted to monetary awards and may include disbarment. See Chosin Few, Inc. v. Scott, 209 F. Supp. 2d 593, 608 (W.D.N.C. 2002) (disbarring an attorney from any further representation of clients in the federal courts of the Western District of North Carolina unless he first satisfied a judge of that court that he could abide by the lawful orders of the court and conduct himself according to the applicable rules of professional conduct); see also Lewis, 611 F. App'x at 137 (affirming bankruptcy court suspension of attorney).

34. This court's Local Rules, the North Carolina Rules of Professional Conduct,[13] and North Carolina laws prohibiting the unauthorized practice of law are also implicated in these

---

[13] Local Rule 2090-3(a) governs standards of conduct for attorneys and states:

> In addition to applicable federal law, the Rules of Professional Conduct adopted by this Court are the Rules of Professional Conduct of the North Carolina State Bar adopted by the Supreme

proceedings.  Local Rule 2091-1(a) requires a debtor's attorney of record in a bankruptcy case to

"remain the responsible attorney of record for all purposes, including the representation of the

debtor in all matters that arise in the case" with limited exceptions that are not applicable here.

Debtors' attorneys are relieved from representation when a case is closed or by order of the

court.  Burton, 442 B.R. at 453; Local Rule 2091-1(b).  In addition, North Carolina Rule of

Professional Conduct ("RPC") 1.16(c) requires lawyers to "comply with applicable law requiring

notice to or permission of a tribunal when terminating a representation."  Kosko, McClean, and

Volks Anwalt violated both the Local Rule of this court and RPC 1.16(c) by abandoning their

representation of the Debtor without notice to the Debtor and without permission of this court.

35. Kosko has also violated other rules of professional conduct.  RPC 1.1 ("Competence")

states:

> A lawyer shall not handle a legal matter that the lawyer knows or
> should know he or she is not competent to handle without
> associating with a lawyer who is competent to handle the matter.
> Competent representation requires the legal knowledge, skill,
> thoroughness, and preparation reasonably necessary for the
> representation.

Kosko readily admitted that he lacked the knowledge, skill, thoroughness, and preparation to

represent the Debtor.  Moreover, Kosko's reliance on McClean was unreasonable.  McClean is

not licensed to practice law in North Carolina and her lack of bankruptcy experience did nothing

to assist Kosko in competent representation of the Debtor.  RPC 1.3 ("Diligence") requires

lawyers to "act with reasonable diligence and promptness in representing a client."  Kosko

_____

> Court of North Carolina, as amended from time to time by that
> state court except as otherwise provided by a specific rule of this
> Court.  Acts or omissions by an attorney practicing before this
> Court which violate the Rules of Professional Conduct adopted by
> this Court shall constitute misconduct and shall be grounds for
> discipline, whether or not the act or omission occurred in the
> course of an attorney-client relationship.

exercised no diligence or promptness in his representation of the Debtor.  With the exception of

one telephone call with the Debtor concerning the filing of a tax return, Kosko entirely abdicated

his representation of the Debtor to Volks Anwalt.  RPC 1.4 ("Communication") states:

> (a) A lawyer shall:
>   (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent . . . is required by these Rules;
>   (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
>   (3) keep the client reasonably informed about the status of the matter;
>   (4) promptly comply with reasonable requests for information; and
>   (5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.
> (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Kosko's inattention to and willful neglect of the Debtor resulted in violations of almost every

part of this rule.  While Kosko received all of the electronic notices related to the Debtor's case,

he forwarded them without review to Volks Anwalt and made no attempt to communicate with

the Debtor.  Kosko did not inform, consult with, or explain anything to the Debtor other than the

necessity of filing a tax return.

36.  Kosko, Volks Anwalt, and McClean have also violated RPC 5.5 ("Unauthorized Practice

of Law").[14]  RPC 5.5(b)(1) prohibits a lawyer who is not admitted in North Carolina from

"establish[ing] an office or other systematic and continuous presence in this jurisdiction for the

---

[14] The Bankruptcy Administrator introduced a Letter of Caution from The North Carolina State Bar to Volks Anwalt through its managing partner, Jessica McHale, into evidence.  The North Carolina State Bar found that Volks Anwalt engaged in the unauthorized practice of law in North Carolina.  The circumstances related to that Letter of Caution are very similar to the relevant facts in this case.

practice of law."  McClean engaged in and caused Volks Anwalt to engage in the unauthorized

practice of law in this state, and they cannot avail themselves of the provisions of RPC 5.5(c)(4).

That subsection states that a lawyer admitted to practice in another United States jurisdiction is

not engaged in the unauthorized practice of law if "the lawyer is associated in the matter with a

lawyer admitted to practice in this jurisdiction who actively participates in the representation and

the lawyer is admitted pro hac vice or the lawyer's services are not services for which pro hac

vice admission is required."  While Kosko is "a lawyer admitted to practice in this jurisdiction,"

he did not "actively participate" in the representation of the Debtor.  He did assist McClean and

Volks Anwalt in their unauthorized practice of law, however, so Kosko also violated RPC 5.5.[15]

Without Kosko's willingness to share his ECF login and password, Volks Anwalt would not

have been able to file the Debtor's petition, schedules, statements, and other documents.

37.  Volks Anwalt and McClean have violated North Carolina law by failing to obtain

authority to transact business in North Carolina as required by North Carolina General Statute

§ 55-15-01.  It is shocking to the court that McClean has caused Volks Anwalt to conduct

business in 43 states without investigating each state's requirements and without any effort to

comply with the laws of states where Volks Anwalt has conducted business.

38.  Volks Anwalt and McClean have also violated the North Carolina law that prohibits the

practice of law by persons other than members of the North Carolina State Bar.  N.C. GEN. STAT.

§ 84-4.  The penalties for such violation include criminal and civil penalties and prohibit the

collection of fees for any services related to the unauthorized practice of law.  N.C. GEN. STAT.

§ 84-8.

39.  McClean's design for Volks Anwalt has some striking similarities with the law practice

---

[15] RPC 5.5(f) says "[a] lawyer shall not assist another person in the unauthorized practice of
law."

in Burton.    In Burton, the attorney's practice was to target homeowners in foreclosure proceedings, lure clients into hiring her to file a bankruptcy case by quoting under-market fees, have clients sign fee contracts purportedly limiting the scope of her representation, file "bare bones" petitions, and then abandon the clients without prior notice and without court approval. Burton, 442 B.R. at 452 ("In short, Burton's business model appears to be: find clients in dire straits; collect whatever she can; whenever she can; and then to give those clients only as much representation as they can pay for (and often less).    When the client's money runs out, so does the representation.")    While not identical to Burton's business plan, McClean structured Volks Anwalt with the same goals of obtaining as much money as possible for as little work as possible followed by client abandonment.    Based on the evidence in this case, it appears that McClean structured Volks Anwalt to obtain retainers from distressed foreclosure clients and then abandon the clients to local "partners" (who were not legitimate partners in Volks Anwalt) without regard to their competency.    Burton was suspended from practice for an indefinite term of at least twelve months.    Burton's reinstatement to practice was only upon application to the court after completion of requirements similar to those set forth herein.    The court is convinced that the sanctions imposed herein do not overreach but are "the minimum sanctions necessary to both protect the public and deter future misconduct." Id. at 467.

40. The Debtor's circumstances at the time of filing and during this case magnify the egregiousness of the actions of Volks Anwalt, McClean, and Kosko.    At the time the Debtor contacted Volks Anwalt, her intent was to file a bankruptcy case pro se.    Volks Anwalt lured her through their direct marketing and convinced her to hire the firm.    The Debtor was very clear that her goal was to stop the foreclosure and save her home, where she lived with her four children

and her grandchild, but the incompetence of Volks Anwalt, McClean, and Kosko prevented the Debtor from reaching her goal.

41. McClean, Volks Anwalt, and Kosko demonstrated an utter disregard for the effect of this case on the Debtor. To them this case was "business as usual," as McClean appears to have designed the Volks Anwalt business plan with the sole purpose of making money while taking no responsibility for the firm's clients and attempting to isolate the firm from any liability related to client representation by associating a local "partner." The actions (or lack thereof) of McClean, Volks Anwalt, and Kosko in this case are offensive both to the court and to the many attorneys who uphold the high standards demanded by the legal profession. Attorneys in this district should carefully consider the potential ramifications on their ability to practice law in North Carolina and in this district before associating with law firms that are not licensed to practice law or do business in this state. See Joshua Walthall, The Potential Pitfalls of Working for an Out-of-State Law Firm, N.C. St. B.J., Fall 2015, at 36. Attorneys in this district should also be aware that "covering" for another attorney at a meeting of creditors or a hearing is considered a representation that is subject to all of the ethical obligations imposed by the North Carolina Rules of Professional Conduct and the Local Rules, including competent representation and adequate preparation. See N.C. State Bar, 99 Formal Ethics Op. 12 (Jan. 21, 2000) ("Covering" a Bankruptcy Proceeding for Another Lawyer).

It is therefore **ORDERED**:

1. Joseph M. Kosko is **disbarred** from practicing before the United States Bankruptcy Court for the Western District of North Carolina for a period of one year after this order becomes final and unappealable;

2. Volks Anwalt and McClean are **disbarred** from practicing before the United States

Bankruptcy Court for the Western District of North Carolina for a period of five years after this order becomes final and unappealable.  Any attorney associated with Volks Anwalt or its successor is prohibited from practicing before the United States Bankruptcy Court for the Western District of North Carolina for a period of five years after this order becomes final and unappealable;

3.  Volks Anwalt shall disgorge and return to the Debtor all payments received in this case on or before **June 10, 2016**;

4.  Nothwithstanding Local Rules 3015-1 and 3015-2, no distributions shall be made from the Chapter 13 Trustee to Kosko, McClean, or Volks Anwalt during the pendency of this Chapter 13 case or in the event this case is dismissed or converted to another chapter.  Funds held by the Chapter 13 Trustee upon a dismissal or conversion of this case shall be distributed to the Debtor;

5.  As a sanction, Kosko and Volks Anwalt shall each pay **$5,000** to the Debtor on or before **June 10, 2016**.  Kosko and Volks Anwalt shall make their payments in certified funds payable to the Debtor and delivered to Warren L. Tadlock, Chapter 13 Trustee, 5970 Fairview Road, Suite 650, Charlotte, North Carolina 28210;

6.  Following the disbarment period for Kosko, Volks Anwalt, and any attorney associated with Volks Anwalt or any successor, a request for admission must be submitted in the form of a written application to this court.  The application must include a certification by the applicant that the applicant has:

> a.  completed 20 hours of continuing legal education related to North Carolina bankruptcy law;

> b.  read the Bankruptcy Code;

c.   read the Bankruptcy Rules; and,

d.   read the Local Rules of this court;

7.   Volks Anwalt and McClean shall maintain all records and recordings in this case and shall turn them over upon request by the Debtor, the Bankruptcy Administrator, or any trustee serving in this case;

8.   With respect to Kosko, this order shall be sent to the North Carolina State Bar for consideration of further disciplinary actions;

9.   With respect to McClean and Volks Anwalt, this order shall be sent to the North Carolina State Bar, the New York State Unified Court System, and the Florida State Bar for consideration of further disciplinary actions;

10.   If Volks Anwalt and Kosko do not comply with the monetary sanctions and disgorgement required by this order, McClean and Kosko shall appear before the court at a compliance hearing on **June 14, 2016** at **1:30 p.m.** at the Charles R. Jonas Federal Building, Courtroom 1-5, 401 West Trade Street, Charlotte, North Carolina 28202.

**SO ORDERED.**

*This Order has been signed electronically.*                      *United States Bankruptcy Court*
*The judge's signature and court's seal appear*
*at the top of the Order.*